IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SANDRA M..,[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

Civ. No. 6:19-cv-00081-MC

OPINION AND ORDER

**MCSHANE, Judge**:

    Plaintiff Sandra M. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Plaintiff alleges that the Administrative Law Judge ("ALJ") erred in rejecting both Plaintiff's subjective symptom testimony and Dr. Frank Sievert's, M.D., medical opinion. Because the ALJ erred in discounting both Plaintiff's testimony and Dr. Sievert's medical opinion, the Commissioner's decision is REVERSED and this matter is REMANDED for an award of benefits.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for DIB on June 17, 2015, alleging disability since August 31, 2012. Tr. 17, 161–62.[2] Her claim was denied initially and upon reconsideration. Tr. 29–30, 59–60. Plaintiff timely requested a hearing before an ALJ and appeared before the Honorable Mark Triplett on September 11, 2017. Tr. 105–06, 17. ALJ Triplett denied Plaintiff's claims by a written decision dated February 22, 2018. Tr. 17–31. Plaintiff sought review from the Appeals Council and was denied on November 15, 2018, rendering the ALJ's decision final. Tr. 1–3. Plaintiff now seeks judicial review of the ALJ's decision.

Plaintiff was 54 years old at the time of her alleged disability onset and 59 at the time of her hearing. *See* tr. 17, 71. Plaintiff completed medical transcription training and 1 year of college. Tr. 179–80 She worked as a care aide, clerical specialist, and special education assistant. Tr. 45–46. Plaintiff alleges disability due to intractable migraine, fibromyalgia, permanent neck injury, Hashimoto thyroid disease, insomnia, gastroesophageal reflux disease, exhaustion, chronic pain, asthma, and sleep apnea. Tr. 71–72.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978,

---

[2] "Tr." refers to the Transcript of Social Security Administrative Record, ECF No. 7, provided by the Commissioner.

980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

### I. Plaintiff's Credibility

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529(a), 416.929(a). When there exists objective medical evidence in the record of an underlying impairment that could reasonably be expected to produce the pain or symptoms alleged and there is no affirmative evidence of

malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (quoting *Fair*, 885 F.2d at 603). The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter,* 504 F.3d at 1040. It is proper for the ALJ to consider the objective medical evidence in making a credibility determination. 20 C.F.R. §§ 404.1529(c)(2); 416.929(c)(2). However, an ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The Ninth Circuit has upheld negative credibility findings, however, when the claimant's statements at the hearing "do not comport with objective evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). "If the ALJ's credibility finding is supported by substantial evidence in the record," this Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted), and "must uphold the ALJ's decision where the

evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citation omitted).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 30.

Plaintiff testified her migraines began when she was 19. Tr. 49. This condition got progressively worse until Plaintiff's medical provider prescribed her methadone in 2000. This reduced her migraines to five or so per month, lasting three days per week. *Id.* She worked as a caregiver (four 12-hour days per week) and a recess monitor (five three-hour days per week). Tr. 47–48, 43, 51. She missed more than eight days per year because of her migraines. Tr. 61. In April 2012, Plaintiff's migraines and neck-related headaches "exploded" when a basketball hit her head and neck. Tr. 51–52. This incident resulted in the loss of her employment due to excessive absences. Tr. 44, 52, 61.

From 2014 to the date of her hearing, Plaintiff had five migraines every month lasting three days. Tr. 56–57. In January 2017, her migraines decreased to two to three times per month after she began taking a number of supplements (Butterbur, Feverfew, and Riboflavin). These ultimately failed, resulting in 10 severe migraines in August 2017. Tr. 56–57. Since then, she has had migraines five days per month lasting three days. Tr. 62. The week before her testimony, she had a "pretty severe" headache on Friday that lasted through her hearing on Monday. Tr. 56, 51, 54. She called her attorney to say she could not attend the hearing, but after taking nausea

medicine she felt well enough for her husband to take her to the hearing. Still, her migraine impacted her memory. Tr. 57, 51.

Plaintiff is only able to drive once or twice per week due to her migraines. Tr. 45. She takes Percocet every day and Vistaril and Omeprazole during a migraine episode. Tr. 50. She has tried multiple preventative drugs, which have resulted in bad side effects. Tr. 50–51. She mostly stays home when she has migraines and, if they are severe, she goes to bed due to nausea and pain. Tr. 56–57.

Generally, Plaintiff gets up at six in the morning, cares for her 20 chickens, takes her pain medicine, goes back to bed, and waits for her pain to subside. Tr. 52. She makes coffee, unloads the dishwasher, and takes her dogs out for a short walk. *Id.* She eats breakfast and sits in her recliner, where she watches TV, reads, or plays games on her phone. Tr. 52–53. Her house is a mess because she lacks energy. Tr. 53. She gardens for about 15 minutes before she has to go back inside. Tr. 53–54. She used to bowl but quit two years prior because her league could not depend on her. Tr. 60–61. When she does not have a migraine, she is fairly functional. Tr. 61. However, she is unreliable, cannot commit to any activity with certainty, and cancels many things. Tr. 62. Her migraine triggers include preservatives, nitrates, MSG, stress, lack of sleep, light, and barometric pressure, especially with extreme weather. Tr. 54–55. Her diet is pure and does not include prepared foods. Tr. 55.

Plaintiff also has bile gastritis and constant stomach irritation and pain. Tr. 49. She has fibromyalgia, which hurts her whole body and makes her tired. *Id.* If she worked full-time, she would miss one day per week due to her headaches and two or three days per week when considering her fibromyalgia. Tr. 59. She has a hard time being on her feet when she has a bad

migraine and cannot function. *Id.* She can stand for about 15 minutes before her back hurts. *Id.* Her back hurt very badly when she was on recess duty and on her feet for two hours per day. Tr. 60.

The ALJ found that the objective medical evidence in the record somewhat confirmed Plaintiff's migraine-related testimony and treatment for fibromyalgia and other issues. Tr. 21. The ALJ found, however, that the objective medical evidence failed to indicate that her impairments affected her to the degree she alleged. *Id.* The ALJ found that there was an intensive treatment record including morphine, methadone, acupuncture, and cervical injections but only intermittent reduction in function. Tr. 28.

Plaintiff argues that the medical history the ALJ summarized is consistent with Plaintiff's testimony. Pl.'s Br. 5, 7. Specifically, Plaintiff argues that the ALJ's summary of the evidence shows that Plaintiff's migraine improvements were short-lived and confirmed her testimony that she had at least two or three migraines per month. *Id.* at 7, 10; *see* tr. 21–30, 56, 58–59. For example, the ALJ found that in March 2014, Plaintiff was headache free for up to two weeks and her medications were very effective. Tr. 22 (citing tr. 312). The ALJ also found that Plaintiff only had six headache days in September 2014. Tr. 27 (citing tr. 714). In fact, Plaintiff had six headache days as of September 18, 2014. Tr. 714. Regardless, these improvements were temporary. In April and May of 2015, both of Plaintiff's treating doctors said she left her three-hour per day job as a recess monitor due to chronic pain and excessive sick days. *See* tr. 23–24, 544, 661. Further, the objective medical evidence does not contradict Plaintiff's testimony that she had two or three migraines per month. *See* tr. 56, 58–59.

By December 2015, Plaintiff had 10 headaches per month, could manage them better than before, and had good control over her chronic back and fibromyalgia pain. Tr. 27 (citing tr. 1238, 1240). The ALJ found that this contrasted with Plaintiff's testimony that she had 15 headache days per month. Tr. 27. In fact, Plaintiff said that she had five migraines per month lasting three days *on average* during the last three years and at the time of the hearing, not every month. Tr. 49, 56, 62. The ALJ also found that by June 2016, Plaintiff's headaches had diminished "dramatically" to two or three headache days per month. Tr. 27 (citing tr. 1187). The ALJ did not mention that Plaintiff was still taking hydrocodone four times per day and morphine three times per day. Again, this evidence does not conflict with Plaintiff's testimony. *See* tr. 1187. Moreover, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)). Although Plaintiff's migraines improved at various points throughout the record, the objective medical evidence indicates ongoing chronic pain despite intensive treatment and medication.

Plaintiff also objects to the ALJ's finding that Plaintiff lacked objective signs of distress. Pl.'s Br. 8–9. The ALJ found that, aside from spasm and lumbar imaging, there were few objective signs of Plaintiff's symptoms. Tr. 25–26. The ALJ admitted that fibromyalgia pain and migraine headaches are generally unaccompanied by objective signs and findings. *Id*. Still, the ALJ found that although Plaintiff testified that she had migraines 50% of the time and frequent fibromyalgia and other pain, the record is largely devoid of objective observations and her

presentation remained the same even when she reported present and severe migraines. *Id.* Plaintiff only appeared in distress or had abnormal affect on several occasions. Tr. 26 (citing tr. 816, 1232). Plaintiff was in no acute distress and had normal affect on numerous occasions. Tr. 26 (citing tr. 787, 802–04, 811, 820, 873, 919, 1006, 1029, 1061, 1076, 1113, 1119, 1132, 1137, 1140, 1162, 1167, 1182, 1186, 1193, 1206, 1209, 1220, 1225, 1236, 1240, 1252, 1264, 1269, 1281, 1291). Plaintiff argues that she would not have driven to a doctor's office during a migraine and was fairly functional when she did not have a migraine. Pl.'s Br. 8; *see* tr. 21, 56–57, 61. Regardless, "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

It is important to consider the objective medical evidence in the context of Plaintiff's fibromyalgia diagnosis. In *Revels v. Berryhill*, the Ninth Circuit discussed the "unique characteristics of fibromyalgia" in disability determinations. 874 F.3d 648, 652 (9th Cir. 2017).

> Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Typical symptoms include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue. What is unusual about the disease is that those suffering from it have muscle strength, sensory functions, and reflexes that are normal. Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling. Indeed, there is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain. *The condition is diagnosed entirely on the basis of the patients' reports of pain and other symptoms. There are no laboratory tests to confirm the diagnosis.*

*Id.* at 656 (emphasis added, internal quotation marks and citations omitted). In addition to the lack of objective laboratory testing that might confirm the diagnosis, fibromyalgia symptoms are

known to "wax and wane," and a person may have good days and bad days. *Id.* at 657. The ALJ must "consider a longitudinal record whenever possible" when determining the RFC of a claimant with fibromyalgia. *Id.* "In evaluating whether a claimant's [RFC] renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods." *Id.* at 662.

Under these circumstances, courts within the District of Oregon have been especially reluctant to rely on a lack of objective medical evidence when considering fibromyalgia cases. *See, e.g., Nunn v. Berryhill*, Case No. 6:17-cv-00203-SB, 2018 WL 2244705, at *10 (D. Or. May 16, 2018) (rejecting a lack of objective medical evidence as a valid factor in considering a fibromyalgia claimant's testimony); *Bair v. Comm'r of Soc. Sec. Admin.*, 3:17-CV-00622, 2018 WL 2120274, at *5 (D. Or. May 8, 2018) (holding the same). Fibromyalgia is notable for the lack of objective medical tests and is often accompanied by apparently normal strength and musculoskeletal examinations. The lack of objective medical evidence cannot, therefore, serve as a clear and convincing reason for rejecting Plaintiff's testimony.

The ALJ also found that despite Plaintiff's near lifelong headaches, Plaintiff worked 48 hours per week as a caregiver through 2012 and 15 hours per week as a recess monitor through 2015. Tr. 29, 180. Defendant argues that because Plaintiff had the same frequency of migraines before and after her alleged disability onset, her caregiver work discounts her testimony. Def.'s Br. 4 (citing tr. 49–50, 56); tr. 161. The ALJ found that Plaintiff's migraines began when she was 19. Tr. 21; *see* tr. 49. The ALJ also found that methadone gave Plaintiff great relief until August 2012, when a basketball struck her on the head. Tr. 21–22; *see* tr. 49, 51–52. Plaintiff began methadone treatment in 2000 and did not begin working as a caregiver until 2010. Tr. 30, 50,

180. She stopped working as a caregiver in August 2012. Tr. 51–52. Because her caregiving work post-dates her improvement with methadone and ended with her head injury, it does not contradict her symptom testimony.

The ALJ also found that Plaintiff continued to work part time until mid-2015, which required her to "be present on at least a fairly consistent basis" and would have been unlikely to continue if her absences were as frequent as she described—two to three days per week. Tr. 26, 21, 29. Plaintiff testified that if she had a full-time job, she would miss two or three days per *month*, not per week. Tr. 59. Further, the ALJ ignored Plaintiff's testimony that she missed more than eight days of work per year and the school district was more lenient with her than with regular employees because she worked there for nearly 20 years. Tr. 61, 163–67. Even so, Plaintiff was ultimately unable to continue working due to her chronic pain because she continuously exceeded her allotted sick days. Tr. 23, 29, 170, 172, 544, 1268.

The ALJ also found that after Plaintiff's motor vehicle accident in November 2016, Plaintiff's treatment records became largely silent on headache treatment and her overriding medical problem was musculoskeletal pain. Tr. 27 (citing tr. 1364, 1367). This is inaccurate. In December 2016, Plaintiff's chronic, generalized pain, migraines, and methadone and hydrocodone use continued. Tr. 1371. By January 2017, Plaintiff had had more frequent migraines. Tr. 1146. Plaintiff's migraines continued in February, March, April, May, and June 2017 and her treating physicians refilled her prescriptions. Tr. 1317, 1330, 1366, 1367, 1304, 1360, 1304.

The ALJ found that there was no objective medical evidence in the record to support Plaintiff's testimony that she had 10 migraines in August 2017. Tr. 21, 27. At the same time, the

ALJ admits that the medical record ended in July 2017. Tr. 27. Because it is the Commissioner's burden to develop the record, this is not an honest reason to discount Plaintiff's testimony. *See Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996) (holding that the ALJ has an independent duty to fully and fairly develop the record) (citing *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)); 20 C.F.R. §§ 404.1512(b), 416.912(b). Even without this additional evidence, Plaintiff had two or three migraine days per month, and the vocational expert testified that missing more than one day per month would render Plaintiff unemployable. Tr. 56, 58–59, 1187, 68. This additional evidence is, therefore, not dispositive.

The ALJ also found that Plaintiff's activities were inconsistent with debilitating pain. Tr. 29. A claimant's daily activities may be grounds for an adverse credibility finding if he "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Fair*, 885 F.2d at 603); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113 (citing *Turner v. Comm'r of Sec. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010)). Here, the ALJ found that Plaintiff cooked, shopped once per week, drove, did light household chores, cared for her pets and chickens, occasionally gardened "in parts," and bowled. Tr. 29 (citing tr. 201–14).

Plaintiff's daily activities are minimal. A claimant does not need to vegetate in a dark room in order to be eligible for benefits. *Molina*, 674 F.3d at 1112–13 (citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987)) (internal quotation marks omitted). Further, Plaintiff's

activities do not contradict her statements. Plaintiff testified that she was fairly functional when she did not have a migraine. Tr. 21, 25, 61. When she had a migraine, she mostly just stayed home and, if it was severe, went to bed. Tr. 56–57. She quit bowling 2 years prior because she was undependable due to her migraines. Tr. 21, 60. These activities are not grounds for an adverse credibility finding.

Finally, the ALJ found that although Plaintiff did not have a substance abuse disorder, "her dependence and prolonged use of [methadone, morphine, and hydrocodone] to address her pain could provide an alternate explanation for her allegations of pain beyond the level supported by objective medical evidence." Tr. 29. Plaintiff said it is unclear what the ALJ meant by this, and the Court is equally flummoxed. *See* Pl.'s Br. 14. The ALJ found that these prescribed medications reduced the number of Plaintiff's migraines. *See* tr. 21, 23–24, 27, 29. The ALJ also found that Plaintiff's doctors monitored her prescription use, she signed an opiate agreement, and she weaned off methadone for one year. Tr. 21–24, 29. Moreover, an ALJ may infer that a claimant's pain was not as disabling as alleged if the claimant failed to seek aggressive treatment, failed to seek an alternative treatment plan after discontinuing effective medication due to mild side effects, or responded favorably to conservative treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039–40 (9th Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007)). None of these factors are present here, and Plaintiff's long-term use of aggressive pain medication is not a permissible basis for an adverse credibility finding.

Given the record as a whole, substantial evidence does not exist to support the ALJ's finding that Plaintiff lacks credibility.

## II. Dr. Sievert's Medical Opinion

Dr. Frank Sievert, M.D., has been Plaintiff's long-term treating physician since 2009. Tr. 29, 714, 751; *see* Pl.'s Br. 15. Dr. Sievert submitted two medical opinions in September of 2015. Tr. 751, 1268. Dr. Sievert opined that Plaintiff "clearly" could not work 40 hours per week every week and had recently retired due to her inability to return to work and excessive sick days. Tr. 1268. Dr. Sievert believed that Plaintiff was unable to work full-time without missing more than two days per month from work due to Plaintiff's: (1) frequently relapsing, chronic, and severe migraine headaches, which rendered her narcotic dependent; and (2) comorbidities, including fibromyalgia and cervical radiculopathy, leading to chronic neck pain. Tr. 751. Dr. Sievert found that Plaintiff's pain or fatigue and cognitive dysfunction resulting from pain medication limited her work abilities. *Id*. The ALJ gave both of Dr. Sievert's medical opinions limited weight. Tr. 30.

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id*. When evaluating conflicting medical opinions, an ALJ need not accept a brief, conclusory, or inadequately supported opinion. *Id*. Dr. Sievert's opinions are uncontradicted. Therefore, the ALJ needed to provide clear and convincing reasons supported by substantial evidence to properly reject Dr. Sievert's opinion. *See Bayliss*, 427 F.3d at 1216 (citation omitted). The ALJ failed to do so here.

An ALJ must weigh the following factors when considering medical opinions: (1) whether the source has an examining relationship with claimant; (2) whether the source has a treatment relationship with claimant; (3) supportability (as shown by relevant evidence and explanation); (4) consistency with the record as a whole; (5) specialization; and (6) other factors, including the source's familiarity with other information in the record. 20 C.F.R. § 404.1527(c)(1)–(6).

Here, the ALJ focused on supportability and consistency, finding the following. Dr. Sievert provided no clinical findings to support his opinions. Tr. 29. Although headaches typically do not have clinical findings, Dr. Sievert cited neck pain with radiculopathy and other specific impairments that typically have clinical findings. *Id.* Dr. Sievert's assessment was inconsistent with the clinical findings in the record, which only included mild degenerative disease and electrodiagnostic testing negative for radiculopathy. Tr. 29–30. The other comorbidities Dr. Sievert cited, such as fibromyalgia, were adequately treated by medications. Tr. 30. The cognitive dysfunction Dr. Sievert referred to is not supported by evidence or a diagnosis in the record. *Id.* Plaintiff used narcotics since 2000 and worked full-time for many years. *Id.* Fatigue did not prevent Plaintiff from working, her alleged pain did. *Id.* (citing tr. 544). Plaintiff's continued activities are inconsistent with severe fatigue. Tr. 30. Finally, the ALJ found that Dr. Sievert, by necessity, relied on Plaintiff's self-reports of headaches and fibromyalgia, which varied "across multiple providers" and "would be expected to lead to unduly pessimistic findings." *Id.*

As the ALJ was aware, headaches typically do not have clinical findings. *See* tr. 29. Despite the lack of clinical findings, there is extensive medical evidence in the record of

15 – OPINION AND ORDER

Plaintiff's migraines, as explained above. Further, the ALJ cited no evidence contradicting Dr. Sievert's opinion that Plaintiff would miss more than two days of work per month. The ALJ acknowledged clinical findings of mild degenerative disease but noted that electrodiagnostic testing in May 2017 was negative for cervical spine radiculopathy. Tr. 29–30; *see* tr. 1036, 751, 1036. This finding ignores other contradictory evidence in the record. A March 2017 magnetic resonance imaging scan indicated cervical radiculopathy. Tr. 979. Likewise, an April 2017 report said that signs and symptoms were consistent with cervical radiculopathy. Tr. 1079.

The other comorbidities that Dr. Sievert cited—fibromyalgia and chronic neck pain—were not adequately treated by medications. In September 2016, Plaintiff's primary incapacitating pain came from whole body aches, which worsened with standing, bending, and coughing despite MS Contin and hydrocodone use. Tr. 1378. Dr. Patrick Rask, M.D., recommended that she stop taking MS Contin, reduce her hydrocodone dose, and resume taking methadone. Tr. 1285. Dr. Rask said that "[i]f her pain is not well-controlled next visit," he may increase her methadone dose. *Id.* In June 2017, Plaintiff continued to have fibromyalgia pain despite continued benefit from Percocet and methadone. Tr. 1360. An examination revealed mild tenderness in Plaintiff's cervical paraspinal area and great tenderness in her right scapulothoracic region. Tr. 1361. The record is also replete with evidence of Plaintiff's chronic neck pain. For example, she had neck pain in May 2015, June 2016, and March 2017, and tenderness in her upper thoracic spine and base of her neck in June 2015. Tr. 544, 1187, 979, 1089, 1361.

There is no evidence or diagnosis in the record supporting Dr. Sievert's reference to cognitive dysfunction except Plaintiff's testimony that her migraines affected her memory. *See* tr. 751, 1360, 541 (where Plaintiff denied adverse effects from hydrocodone in May 2015), 534

(denying the same in June 2015), 51. Even so, Dr. Sievert opined that Plaintiff was unable to work full-time due to her migraines and comorbidities, and that either her pain *or* fatigue and cognitive dysfunction from pain medication limited her work abilities. Tr. 751. Dr. Sievert's opinion that Plaintiff could not work full-time was not based on his speculation that fatigue and cognitive dysfunction could limit her work abilities.

Plaintiff stopped working by May 2015 due to chronic pain, not necessarily fatigue. Tr. 544. In April 2015, however, Plaintiff's fatigue was much worse than it had been before. Tr. 667–68. Dr. Sievert gave Plaintiff a note excusing her from work for 1 week due to her fatigue. Tr. 668. In September 2015, Dr. Sievert said that Plaintiff had unresolved severe chronic fatigue, which was one of the reasons that she could not work 40 hours per week. Tr. 1269. By September 2016, Plaintiff had had acute fatigue since April 2015. Tr. 1004. Further, Plaintiff's continued daily activities—cooking, shopping, driving, doing light household chores, caring for pets and chickens, and gardening "in parts"—are not inconsistent with severe fatigue. *See* tr. 29 (citing tr. 201–14). As explained above, Plaintiff's daily activities are minimal, and when she had a migraine, she went to bed. *See* tr. 56–57.

Regarding Dr. Sievert's reliance on Plaintiff's self-reports of headaches and fibromyalgia, the ALJ failed to identify any inconsistencies between Plaintiff's reports. *See* tr. 30, 21–26. The ALJ also failed to explain why Plaintiff's self-reports were likely to lead to "unduly pessimistic findings." *See.* tr. 30. As explained above, the ALJ provided insufficient reasons to support his finding that Plaintiff lacks credibility.

The ALJ failed to give clear and convincing reasons supported by substantial evidence for giving Dr. Sievert's medical opinion partial weight.

**III. The Credit-as-True Doctrine**

Because the ALJ erred, the question is whether to remand for further administrative proceedings or an award of benefits. "Generally, when a court of appeals reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Bernecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (internal quotation marks and citations omitted). Under the "credit-as-true" doctrine, however, remand for calculation of benefits is appropriate when:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 at 1020. If "the record raises crucial questions as to the extent of [a claimant's] impairment given inconsistences between his testimony and the medical evidence," the issues should be resolved in further proceedings. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014). Because "[t]he touchstone for an award of benefits is the existence of a disability" rather than an ALJ's error, the court must assess whether outstanding issues remain *before* considering whether to credit erroneously rejected evidence as a matter of law. *Brown-Hunter*, 806 F.3d at 495 (citations omitted). Even if all the requirements are met, the court may nevertheless remand "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled" within the meaning of the Act, such as when there are inconsistencies between testimony and the medical record, or if "the government has pointed to evidence in the record that the ALJ overlooked" and explained how that evidence belies

disability. *Dominguez v. Colvin*, 808 F.3d 403, 407–08 (9th Cir. 2015) (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)) (internal brackets and quotation marks omitted).

Here, Plaintiff meets all three requirements. The record is fully developed, and there are no ambiguities that further administrative proceedings need resolve. Even if conflicting evidence regarding Plaintiff's possible cervical radiculopathy were resolved in favor of Defendant, the ALJ failed to provide sufficient reasons for rejecting Plaintiff's credibility and Dr. Sievert's medical opinions. Credited as true, Plaintiff's testimony, Dr. Sievert's medical opinions, and the vocational expert's testimony establish that Plaintiff is disabled under the Act. The vocational expert testified that employers generally allow one absence per month, and consistently exceeding that would prevent a person from employment. Tr. 68. Because Plaintiff and Dr. Sievert said that Plaintiff would miss more than one day of work per month and is unable to work full-time, Plaintiff is disabled under the Act. *See* tr. 59, 1268, 751. Moreover, consideration of the record as a whole convinces the Court that Plaintiff is disabled. The Court sees no purpose for further proceedings.

## CONCLUSION

For these reasons, the Commissioner's final decision is REVERSED and this matter is REMANDED for calculation and award of benefits. Final judgment shall be entered accordingly.

IT IS SO ORDERED.

DATED this 13th day of November, 2019.

s/ Michael J. McShane
Michael J. McShane
United States District Judge

19 – OPINION AND ORDER